UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD X ZAWITZ, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>STAR MAGIC, et al.,<br><br>Defendants. | Case No. 20-cv-07121-DMR<br><br>**ORDER ON DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 16 |

Plaintiffs Tangle, Inc. and Richard X. Zawitz filed this action against Defendants Star Magic and Shlomo Ayal alleging copyright infringement, trademark infringement, unfair competition, and tortious interference with economic advantage. [Docket No. 1 ("Compl.").] Defendants move to dismiss the complaint on the basis that the court lacks personal jurisdiction over them. [Docket Nos. 16 ("MTD"), 23 ("Reply").] Plaintiffs oppose. [Docket No. 20. ("Opp.").] The court held a hearing on February 25, 2021.

For the reasons stated below, the motion is granted.

## I. BACKGROUND

### A. Parties

Tangle is a California corporation and the exclusive master licensee for the manufacture and marketing of the Tangle Sculpture, a unique sculptural design used for play, therapy, and educational purposes. Compl. ¶¶ 2, 6; *id.*, Ex. 2. Zawitz is the founder of Tangle and the creator and owner of the Tangle Sculpture. *Id.* ¶ 1. Star Magic is a business entity with its principal place of business in New York. MTD at 1. Ayal is the President of Star Magic and in charge of Star Magic's business operations. *Id.*

Star Magic has purchased Tangle Sculptures from Tangle since the 1980s. Compl. ¶ 8. Star Magic originally purchased Tangle products for resale in its New York storefront, but it closed its

brick-and-mortar retail stores in the early 2000s and began selling Tangle products exclusively online, including on Amazon. *Id.* Ayal asserts that neither he nor other Star Magic representatives have ever traveled to California for purposes related to Star Magic's business. [Docket No. 16-1, Declaration of Shlomo Ayal ("Ayal Decl.") ¶ 6.] All meetings between Plaintiffs and Defendants have taken place in New York. *Id.* Additionally, no Star Magic entity has been incorporated in California, is registered to do business here, or has a principal place of business in this state. *Id.* Star Magic does not operate any physical stores in California and does not have any offices or warehouses here. *Id.* According to Ayal, Star Magic does not have any employees in California and does not engage in any direct advertising of its products, much less any advertising directed to California customers specifically. *Id.* ¶¶ 6-7. Ayal avers that Star Magic lists the products it sells on Amazon and similar platforms and ships the products wherever the purchasers are located. *Id.* ¶ 9.

### B. Allegations and Claims

When Plaintiffs began considering selling Tangle products on Amazon, they discovered that Defendants were already using the Tangle name to sell over ten brands through Amazon. Compl. ¶ 9. Plaintiffs further discovered that Defendants were mislabeling Tangle products using inaccurate Universal Product Code ("UPC") and Amazon Standard Identification Number ("ASIN") numbers. *Id.* UPCs are 12-digit bar codes used for retail packaging in the United States. Plaintiffs used UPCs to distinguish Tangle products according to size, material, texture, color, etc. *Id.* ¶ 10. An ASIN is a unique block of 10 letters and/or numbers that Amazon assigns to an item when a third-party seller places a product with a UPC for sale on Amazon. *Id.* ¶¶ 11-12. Once the ASIN is assigned, Amazon requires all other sellers of the same item to use the same UPC and ASIN established by the first seller. *Id.* ¶ 12. Defendants' mislabeling resulted in Plaintiffs' inability to create the correct listings for their own Tangle products. *Id.* ¶¶ 13-14. In addition to mislabeling items, Defendants allegedly used an unauthorized name and mark for Tangle products on Amazon and falsely listed Star Magic as the brand for these items. *Id.* ¶ 15. Defendants used names like "Tangle Magic Twister" and other variations of Tangle marks combined with the words "Star" and "Magic." *Id.* ¶¶ 16-17.

Plaintiffs allege that Defendants' unauthorized online conduct misled consumers to associate

2

Tangle Products with Defendants' business. Compl. ¶ 17. Plaintiffs further allege that Defendants intentionally placed incorrect listings of Tangle products on Amazon and intentionally refused to correct them in order to suppress Tangle's own sales. *Id.* ¶¶ 17-19. As a result of Defendants' conduct, Plaintiffs eventually stopped selling Tangle Sculptures to Defendants. *Id.* ¶ 20. In response, Defendants wrongfully copied and sold "cheap imitations" of Tangle products using the Tangle name and product designations. *Id.*

On July 6, 2020, Ayal sent an email to Plaintiffs offering to place an order for Tangle products and informing Plaintiffs that if they did not accept the offer, he would begin to sell a Star Magic version of the Tangle Sculpture called the "Star Magic Twister." Compl., Ex. 1. Ayal claimed that he had consulted an attorney who assured him that the Star Magic Twister did not violate Tangle's trademark rights. Compl. ¶ 22; *id.*, Ex. 1. Plaintiffs allege that the Star Magic products are "exact duplicates" of the Tangle products and are "likely to create confusion" among consumers. *Id.* ¶¶ 22, 24. Defendants have allegedly sold Star Magic Twister products to people located in California through Amazon. *Id.* ¶¶ 25-26. Plaintiffs bring claims for copyright infringement under 17 U.S.C. § 101 *et seq.*; trademark infringement under 15 U.S.C § 1114 *et seq.*; violations of the Lanham Act, 15 U.S.C. § 1125(a); tortious interference with prospective economic advantage; and violations of California and New York's unfair competition laws. Compl. ¶¶ 35-101.

Defendants move to dismiss the claims for lack of personal jurisdiction.

## II. DISCUSSION

### A. Legal Standards for Personal Jurisdiction

"Where . . . there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006). Because California's long-arm statute allows a court to exercise personal jurisdiction to the extent permitted by the Due Process Clause of the United States Constitution, "the jurisdictional analyses under state law and federal due process are the same." *Id.*; *see also* Cal. Civ. Proc. Code § 410.10 ("A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United

3

States.").

In a motion to dismiss for lack of personal jurisdiction, the non-moving party "bears the burden of establishing that jurisdiction is proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Where, as here, a district court rules on a motion to dismiss without holding an evidentiary hearing, the non-moving party "need only demonstrate facts that if true would support jurisdiction over the defendant." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). "[U]ncontroverted allegations in the complaint must be taken as true . . . [and] [c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

Personal jurisdiction may be either general or specific. *Bristol-Myers Squibb Co. v. Sup. Ct. Cal., San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (U.S. 2011). Plaintiffs do not assert nor do the pleadings support the existence of general jurisdiction. Accordingly, the only issue is whether the court may exercise specific jurisdiction over Defendants.

Due process requires that a defendant have "certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations omitted). The Ninth Circuit uses a three-part test to analyze whether a party's "minimum contacts" comport with the doctrine articulated in *International Shoe*:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

4

*Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1107 (9th Cir. 2020) (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)). "The plaintiff bears the burden of satisfying the first two prongs of the test." *Id.* (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). If the plaintiff meets its burden on the first two prongs, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)). If any of the three factors are not met, "jurisdiction in the forum would deprive the defendant of due process of law." *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995).

### B. Purposeful Direction and the *Calder* Test

Under the first prong of the specific jurisdiction test, purposeful availment and purposeful direction are distinct concepts. *Schwarzenegger*, 374 F.3d at 802. Purposeful availment is most often used in cases related to contract disputes, and purposeful direction is used in cases, such as this intellectual property action, that sound in tort.[1] *Id.*; *see Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1067 (9th Cir. 2017) (copyright infringement action sounds in tort). Purposeful direction is analyzed under the three-part test derived from *Calder v. Jones*, 465 U.S. 783 (1984): "that the defendant allegedly ha[s] (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). The *Calder* test is appropriate here because Plaintiffs allege tortious conduct by Defendants.

#### 1. Intentional Act

In the Ninth Circuit, an "intentional act" is "an external manifestation of the actor's intent to perform an actual, physical act in the real world, not including any of its actual or intended results." *Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 674 (9th Cir. 2012) ("*Washington Shoe*") (abrogation on other grounds recognized by *Axiom Foods, Inc.*, 874 F.3d at 1070).

---

[1] At the hearing, Plaintiffs argued that the "purposeful availment" and "purposeful direction" tests are not totally distinct. However, Plaintiffs were not able to identify any caselaw applying the "purposeful availment" test (or a hybrid of the two tests) to a copyright/trademark action.

Here, Plaintiffs allege that Defendants committed several intentional acts, including creating unauthorized, misleading listings on Amazon and manufacturing and distributing infringing copies of the Tangle Sculpture. Defendants do not dispute that this prong of the *Calder* test is satisfied. *See Adobe Sys. Inc. v. Nwubah*, No. 18-cv-06063-LHK, 2019 WL 6611096, at *6 (N.D. Cal. Dec. 5, 2019) ("In the Ninth Circuit, an 'intentional act' includes selling an allegedly infringing product.").

### 2. Express Aiming

The second prong of the *Calder* test requires that the non-forum defendant "expressly aimed" the intentional act(s) at the forum state. *Dole Food Co.*, 303 F.3d at 1111. The Supreme Court has established that the "express aiming" prong requires a showing that "the defendant's conduct connects him to the *forum* in a meaningful way," not merely to a forum resident. *Walden v. Fiore*, 571 U.S. 277, 290 (2014) (emphasis added); *see also Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1148 (9th Cir. 2017) ("Plaintiffs were required to make a prima facie showing that Defendants' alleged actions were directed at [the forum state], not just at individuals who reside there."). Mere "knowledge of the plaintiffs' strong forum connections, plus the foreseeable harm the plaintiffs suffered in the forum" is not sufficient to establish minimum contacts. *Axiom Foods, Inc.*, 874 F.3d at 1069 (cleaned up).

Here, Defendants argue that that the "express aiming" prong is not met because they did not "target third-party purchasers in California or in any other specific forum and the products offered for sale are available for purchase worldwide." Mot. at 8. They point out that they have no stores, warehouses, or employees in California, and do not engage in "any direct marketing or advertising of products . . . , whether to California or otherwise." Ayal Decl. ¶ 6. Plaintiffs respond that Defendants have had a long-standing relationship with Tangle (which is located in California), purchased Tangle products from Tangle, sold and shipped "substantial amounts" of Tangle products to people in California, interfered with Tangle's ability to complete their own sales in California, and used Tangle's name to confuse consumers in California. Opp. at 7-8.

The Ninth Circuit has "struggled with the question whether tortious conduct on a nationally accessible website is expressly aimed at any, or all, of the forums in which the website can be

viewed." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1229 (9th Cir. 2011). However, the caselaw makes clear that a defendant must do "something more" than merely operate a passive website; there must also be "conduct directly targeting the forum." *Id.* (internal quotation marks and citations omitted). In *Mavrix*, a celebrity photo agency sued an Ohio company for copyright infringement in a California district court. The complaint alleged that the defendant had posted the plaintiff's copyrighted photographs on its celebrity gossip website. *Id.* at 1222-23. The district court granted the defendant's motion to dismiss for lack of personal jurisdiction, but the Ninth Circuit reversed. The court observed that the defendant "operated a very popular website with a specific focus on the California-centered celebrity and entertainment industries." *Id.* at 1230. The defendant also knew about its substantial California user base and "exploit[ed] that base for commercial gain by selling space on its websites for advertisements" that were directly targeted to Californians. *Id.* The Ninth Circuit determined that the defendant "anticipated, desired, and achieved a substantial California viewer base" and a California audience was "an integral component of [the defendant's] business model and profitability." *Id.* These factors were sufficient for the court to find personal jurisdiction over the defendant in California.

By contrast, district courts in California have "declined to find express aiming based on alleged sales of products that infringe intellectual property rights through commercial, interactive websites accessible to California consumers." *Graco Minnesota Inc. v. PF Brands, Inc.*, 2019 WL 1746580, at *4 (S.D. Cal. Apr. 17, 2019) (citing cases). In *Graco*, for example, the defendants sold and distributed allegedly infringing products on eBay, Amazon, and other online platforms. *Id.* at *1. At least some of the products were sold to California customers. *Id.* at *6. Additionally, the defendants knew the plaintiff was located in California, since the plaintiff had sent a cease and desist letter informing the defendants that it intended to file a lawsuit in California. *See id.* at *3. The court held that these contacts were not sufficient to support personal jurisdiction over the defendants in California. It noted that although the defendant sold some of the allegedly infringing products to California customers, "[t]he record does not show that Defendants' business is targeted at a California-specific market or industry." *Id.* at *6. In other words, selling infringing products online where anyone could buy them was not conduct that was expressly aimed at California. *See id.*

7

Recently, a court in this district granted a Rule 12(b)(2) motion where the defendant had allegedly distributed an app-based videogame that was a "blatant clone" of the plaintiff's copyrighted videogame. *See Good Job Games Bilism Yazilim Ve Pazarlama A.S. v. SayGames LLC*, 458 F. Supp. 3d 1202, 1205 (N.D. Cal. May 7, 2020) (Chen, J.). In relevant part, the court held that "[t]he mere availability of downloading [the infringing content] in California, by itself, does not create personal jurisdiction." *Id.* at 1207. The court distinguished *Mavrix* on the basis that the celebrity gossip website in that case "focused on California-based celebrities," whereas the allegedly infringing game in *Good Job Games* had "no specific focus in California; the app-based videogame is not about California or anything in/from California." *Id.* at 1209. None of the defendant's advertisements were directed at California or even mentioned this state. *Id.* The court also noted that there was no evidence that the downloads of the infringing game were "concentrated in California" and no allegations that there was "anything unique about the California-consumer market" that directed the defendant's activities to this forum. *See id.* at 1210.

Like *Graco* and *Good Job Games*, this case is distinguishable from *Mavrix*. Plaintiffs do not allege or present evidence that Defendants' business is targeted to a California-specific market or industry, that the allegedly infringing products have any particular connection to California other than their similarity to Plaintiffs' products which are manufactured in California, or that Defendants advertise or provide services to California customers specifically. *See Adobe Sys. Inc. v. Cardinal Camera & Video Ctr., Inc.*, No. 15-cv-02991-JST, 2015 WL 5834135, at *5 (N.D. Cal. Oct. 7, 2015) (finding the express aiming requirement not met where the plaintiff did not allege or present evidence that the defendant "advertise[d] in California, market[ed] products specifically intended for a California audience, or in any other way direct[ed] its sales activities to California."). Plaintiffs' allegations do not connect Defendants to California; they connect Defendants to Tangle and Zawitz, who are forum residents. However, under Ninth Circuit law, the court must look to Defendants' "own contacts" in the forum, not the Defendants' knowledge of Tangle's connections to California. *Axiom Foods, Inc*, 874 F.3d at 1070; *see also Graco*, 2019 WL 1746580 ("A plaintiff does not show express aiming by alleging injuries that are 'entirely personal to him and would follow him wherever he might choose to live or travel' and 'not tethered to California in any meaningful way.'" (quoting *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015))).

8

Plaintiffs' arguments to the contrary are unavailing. First, they rely heavily on *Calder*, but that case is distinguishable. In *Calder*, the defendant wrote an allegedly libelous story about a California resident that was circulated within California. 465 U.S. at 785, 788-89. The court held that jurisdiction over the defendant was proper in California because "California is the focal point both of the story and of the harm suffered." *Id.* at 789. Plaintiffs argue that this case is similar to *Calder* because Defendants directly sold infringing products to California residents and that conduct harmed Plaintiffs in California. Opp. at 8. Plaintiffs' argument is not compelling. In *Walden*, the Supreme Court clarified that its decision in *Calder* was narrowly focused on libel actions. *See Walden*, 571 U.S. at 287 (stating that, in *Calder*, "[t]he strength of [the defendant's] connection [to California] was largely a function of the nature of the libel tort"). Specifically, a claim for libel necessarily requires publication to third parties as well as reputational injury. *Id.* at 287-88. Because the plaintiff's reputational injury was based on the perception of the California public, the defendant's conduct was connected to the state itself and not just a plaintiff who resided there.[2] *Id.* at 288 (finding that "the defendants' intentional tort actually occurred in California" because "publication to third persons is a necessary element of libel"). Unlike in *Calder*, where the plaintiff's claims arose only because he suffered reputation loss in California, Plaintiffs acknowledge that "Star Magic's sale of infringing products in any jurisdiction would harm Tangle in California . . . ." Mot. at 8. Since Plaintiffs could have brought this case regardless of whether Defendants sold any products in California, Defendants' conduct is not directed at the state itself.[3]

Second, Plaintiffs cite cases that were decided before *Walden* and relied on Ninth Circuit cases that were—in relevant part—abrogated by that opinion. *See Beachbody, LLC v. Estrada*, 2011 WL 13220108 (C.D. Cal. Apr. 26, 2011); *Sennheiser Elec. Corp. v. Chutkowski*, 2012 WL 13012471, at *4 (C.D. Cal. Apr. 20, 2012). Both *Beachbody* and *Sennheiser* cited *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104 (9th Cir. 2002) and *Bancroft & Masters, Inc. v. Augusta National, Inc.*,

---

[2] *Keeton v. Hustler Magazine, Inc.*, also cited by Plaintiffs, was similarly a libel case and is distinguishable for the same reasons. 465 U.S. 770 (1984).

[3] Plaintiffs also understate the extent of relevant contacts in *Calder*, since the defendants in that case wrote the allegedly defamatory article based on information provided by California sources. *See Calder*, 465 U.S. at 788-89.

223 F.3d 1082 (9th Cir. 2000), for the proposition that specific jurisdiction can be found where a defendant directs wrongful conduct at a plaintiff it knows resides in the forum state. However, "the Ninth Circuit's reasoning in *Dole* and *Bancroft* . . . is simply not consistent with the Supreme Court's decision in *Walden*," which requires a connection to the forum state itself. *CWT Canada II Ltd. P'ship v. Danzik*, WL 571797, at *8 (D. Ariz. Jan. 26, 2018).

Third, the parties' alleged "decades-long relationship" does not change the analysis. *See* Opp. at 10. While a longstanding relationship between the parties might be relevant to a purposeful availment analysis, Plaintiffs do not provide authority that a prior business relationship is relevant to the express aiming prong of the purposeful direction test.[4] Thus, the parties' past dealings only serve to connect Defendants to Plaintiffs rather than to California. Because a defendant's conduct must be connected to the forum state and not merely a forum resident, the parties' prior business relationship does not establish the minimum contacts necessary to exercise personal jurisdiction over Defendants. *See Walden*, 571 U.S. at 290.

Finally, Plaintiffs' allegations that Defendants sell infringing Tangle products in California are likewise unavailing. The Ninth Circuit has held that a sale in a forum state is not a substantial connection where the sale "involved the forum state only because that is where the purchaser happened to reside." *Boschetto*, 539 F.3d at 1019. Although *Boschetto* involved only a single sale into California, district courts have applied this principle to include multiple sales to forum residents that "were not specifically directed contacts, but instead occurred only because the purchasers of Defendants' goods happened to reside in California." *Imageline, Inc. v. Hendricks*, 2009 WL 10286181, at *4 (C.D. Cal. Aug. 12, 2009) (granting a Rule 12(b)(2) motion in a copyright infringement action where 10% of the defendants' sales were made to California residents); *see also Adobe Sys. Inc.*, 2019 WL 6611096, at *7 ("[A] limited number of products shipped into a forum flowing from a defendant's online sales activity is insufficient to establish express aiming."); *Athena Cosmetics, Inc. v. U.S. Warehouse, et al. Additional Party Names: Tim Pham, Warehouse USA,*

---

[4] Plaintiffs cited several cases examining whether the defendant knew its conduct would cause harm to a forum resident. However, whether a defendant knows their harm will likely be suffered in the forum state goes to the third prong of the *Calder* effects test. Those considerations are not relevant to the "express aiming" prong.

*LLC*, 2020 WL 1969260, at *8 (C.D. Cal. Mar. 5, 2020) ("The sale of items from third-party websites to California consumers does not target California.").[5]

These cases are particularly compelling here since Plaintiffs do not allege or present evidence of the extent of Defendants' sales of infringing products to California residents. Instead, Plaintiffs summarily assert that 10% of all Tangle products sold on Amazon in 2019 and 2020 were shipped to customers in California and surmise that "it is highly likely that Star Magic's sales to California are similarly significant." Zawitz Decl. ¶ 24. As a preliminary matter, there is no evidence that the percentage of Amazon sales of Tangle products in California is a reliable proxy for Star Magic sales in California. Further, even if that inference could be drawn, there is no evidence regarding how many *infringing* products Star Magic sold to California customers.[6] Since Plaintiffs must show that their claims "arise[] out of" Defendants' forum-related activities, *Schwarzenegger*, 374 F.3d at 802, the relevant contacts are Defendants' sales of infringing products, not their total sales. *See Adobe Sys. Inc. v. Cardinal Camera & Video Ctr., Inc.*, No. 15-cv-02991-JST, 2015 WL 5834135, at *5 n. 5 (N.D. Cal. Oct. 7, 2015) ("Although [the defendant] admits to sending 1.2% of its sales to California, there is no reason to believe that any of the products making up the 1.2% of sales are infringing . . . products."). Finally, Plaintiffs do not assert that Defendants sell a disproportionately high number of products to California customers. *See Tart Optical Enterprises, LLC v. Light Co.*, 2019 WL 9048862, at *13 (C.D. Cal. Aug. 7, 2019) (holding that the

---

[5] At the hearing, Plaintiffs explained that distributors can sell through Amazon in various ways, including: (1) Amazon buys products from the distributors and the consumers in turn buy those products from Amazon; (2) the consumers buy products from the distributors but Amazon ships the products; or (3) the consumers buy products from the distributors and the distributors ship the products. Defendants allegedly use the third method, selling and shipping their products directly to consumers. Plaintiffs seemed to argue that this "direct shipping" model shows express aiming because Defendants knew they were selling infringing products to California customers. Plaintiffs do not cite any authority for the proposition that direct shipping is jurisdictionally relevant. In *Imageline*, the district court found that the express aiming prong was not met where the defendants sold the allegedly infringing products through eBay, even though the defendants directly shipped the products to California customers. *See* 2009 WL 10286181, at *1, 4. The fact that Defendants knew that some of their products were being shipped to California does not alter the basic analysis. Plaintiffs' argument with respect to direct shipping is not persuasive.

[6] Defendants state that they sold a total of fifty of the "Star Magic Twister" products, and of these, sold ten units to customers who gave a California address. Ayal Decl. ¶ 10. However, the allegations in the complaint are not limited to the sales of Star Magic Twister products.

defendants did not expressly aim their conduct at California where "a material portion of total sales, but not necessarily more than would be expected by an online retailer who ships to many domestic and foreign locations, was shipped to customers located in California"). Thus, Defendants' alleged sales of infringing products in California do not establish a substantial connection to this state. *See Imageline, Inc.*, 2009 WL 10286181, at *5 ("The listings did not target California, but simply went to California residents who happened to be the eBay purchasers.").

In sum, Plaintiffs have not met their burden of showing that Defendants expressly aimed their conduct at California. Accordingly, the court need not reach the remaining aspects of the *Calder* or minimal contacts tests.

## III. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss under Rule 12(b)(2) is granted. Plaintiffs' complaint is dismissed without leave to amend. The Clerk of Court shall enter judgment for Defendants and against Plaintiffs and close this case.

**IT IS SO ORDERED.**

Dated: May 5, 2021



_____
Donna M. Ryu
United States Magistrate Judge